UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Monique Remillard

    v.                                              Civil No. 20-cv-1141-SE
                                                  Opinion No. 2025 DNH 120

Southern New Hampshire Health System, Inc. and
Foundation Medical Partners, Inc.

ORDER

Monique Remillard brought this suit against her former employers, Southern New Hampshire Health System, Inc. and Foundation Medical Partners, Inc. She alleged claims for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and New Hampshire Revised Statute Annotated (RSA) § 354-A. The parties filed cross-motions for summary judgment. The court denied Remillard's motion and granted the defendants' motion as to all claims except Remillard's discrimination claim based on a failure to accommodate. Remillard v. S. New Hampshire Health Sys., Inc., No. 20-cv-1141-SE, 2024 WL 4349851 (D.N.H. Sept. 30, 2024). Both Remillard and the defendants now move for reconsideration of the court's order on their summary judgment motions.

In addition, the parties ask for "clarification" of certain issues remaining in the case. Although these concerns would be more properly presented in motions in limine, the court addresses the parties' requests in this order to streamline and illuminate the questions remaining for trial and pretrial motion practice.

Standard of Review

Reconsideration is "appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or

if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009); see L.R. 7.2(d). A party cannot use a motion for reconsideration "to undo its own procedural failures" or to "advance arguments that could and should have been presented" earlier. Allen, 573 F.3d at 53. Likewise, a motion for reconsideration is not "a mechanism to regurgitate old arguments previously considered and rejected." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quotations omitted).

## Background

A detailed background of the case can be found in the court's order on the parties' cross-motions for summary judgment. Remillard, 2024 WL 4349851, at *2-5. The court provides only a brief summary of the facts relevant to the issues presented in the parties' motions for reconsideration.

Remillard, who is allergic to certain fragrances and chemicals, worked for the defendants as a nurse for approximately two years. During Remillard's employment, the defendants implemented several measures to accommodate her disability. They did not implement every one of Remillard's requests, however, such as her request to post signs that their facility was fragrance-free. Despite the defendants' efforts, Remillard had numerous allergic reactions to fragrances or chemicals during her employment, four of which sent her to the emergency room.

After her third serious reaction, the defendants would not allow Remillard to return to work as they considered whether they could continue to accommodate her. They requested that Remillard obtain several pieces of information from her medical provider, including a letter outlining her provider's "diagnosis, prognosis, treatment, follow-up plans and any specific

recommendations (if any)[,] restrictions[,] or accommodations at work." Remillard, 2024 WL 4349851, at *3. They also asked Remillard to have her provider identify the specific ingredient in bleach that triggered her reactions and to answer whether her condition was life-threatening. Remillard, through her counsel, initially refused to give any additional information. After approximately two-and-a-half months of communications between Remillard's attorney and the defendants' attorney, Remillard ultimately submitted a letter from a doctor of occupational and environmental medicine that recommended appropriate accommodations. After the defendants determined that they could implement the recommended accommodations, and after Remillard acknowledged that the defendants could not guarantee her safety, Remillard returned to work.[1]

Remillard worked without a notable incident for approximately the next year. However, she eventually had her fourth and most serious allergic reaction, which heightened several of the defendants' employees' existing concerns that Remillard's condition was life-threatening. After that reaction, Remillard requested that the defendants provide some refresher education to their employees about her condition. The defendants did not specifically respond to that request, determined that they could not keep Remillard safe, and terminated her employment six days later.

Remillard brought claims for disability discrimination and retaliation. Count I, her claim for disability discrimination, was predicated on the defendants' alleged failure to accommodate her, her *de facto* suspension, and her ultimate termination. Count II asserted a claim for disability retaliation based on the defendants' decisions to suspend Remillard and terminate her employment. Both Remillard and the defendants moved for summary judgment.

---

[1] Remillard characterizes her unpaid absence from work during this period as a "suspension." Although the defendants dispute that they suspended Remillard, the court uses the term as a convenient shorthand that is understood by the parties to refer to that particular period.

The court granted the defendants' motion as to Remillard's retaliation claim. It also granted their motion with respect to her discrimination claim insofar as it was based on actions other than a failure to accommodate. Employing the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the court held that the undisputed record evidence shows that the defendants were motivated solely by reasonable concerns for Remillard's safety—concerns which arose only after Remillard had several serious allergic reactions to fragrances and chemicals despite the defendants' efforts to accommodate her—when they suspended and fired her. Because no reasonable factfinder could conclude that the defendants' safety concerns were pretextual or that the defendants were motivated by discriminatory animus, those employment decisions could not be the basis for Remillard's disability discrimination or retaliation claims based on the facts of this case.

The court denied the defendants' motion as to Remillard's failure to accommodate claim. The court summarized Remillard's claim as follows:

> Remillard first sought accommodations for her allergy in January 2018 when, at the defendants' request, she met with the employee health department. She concedes that the defendants implemented several accommodations for her disability during her employment. In her objection to the defendants' summary judgment motion, however, Remillard asserts that the defendants failed to implement or fully implement certain reasonable accommodations that she requested, including posting signs that the facility was fragrance-free. At oral argument, Remillard clarified that she was arguing that the defendants also failed to "educate and reeducate" employees on the accommodations, and that they did not grant her request for a brief leave of a day or two after a serious allergic reaction.

Remillard, 2024 WL 4349851, at *13. After discussing the defendants' "several persuasive arguments," the court nevertheless concluded that, when viewing the evidence in the light most favorable to Remillard, there was a factual dispute as to whether the defendants failed to reasonably accommodate her. Id. at *15-16.

In addition, Remillard moved for partial summary judgment on her discrimination claim. She argued that the defendants could prevail only if they could satisfy the direct threat affirmative defense and, because they could not, they were liable for disability discrimination based on the undisputed evidence. Given the ruling granting the defendants summary judgment on all but the claim alleging a failure to accommodate, the court's analysis of Remillard's motion was limited to that claim. The court denied Remillard's motion because it found that there are disputes of fact as to whether the defendants reasonably accommodated her and, if they did not, whether they can take shelter behind the direct threat defense.

The parties now move for reconsideration of the court's order. The court addresses each motion in turn.

I.  Remillard's Motion for Reconsideration

As discussed above, the court granted the defendants' motion for summary judgment as to Remillard's disability discrimination claim to the extent that it was based on actions other than a failure to accommodate. Remillard moves for reconsideration of that portion of the court's order. Specifically, Remillard's motion challenges the court's conclusion that the defendants' concern for her safety was a legitimate, non-discriminatory reason for the adverse employment actions. She argues that the defendants' safety concerns cannot be considered a legitimate and non-discriminatory reason because they arose from her disability.

The court need not rehash in detail the analysis set forth in its order on the parties' summary judgment motions. Suffice it to say, the court has already rejected Remillard's argument, and her attempts to distinguish certain of the cases on which the court relied is unpersuasive. Indeed, Remillard cites no new case law in her motion to reconsider, much less

5

any to show that the court's conclusion is erroneous as a matter of law. Simply put, Remillard offers no reason to reconsider the court's conclusion that, in light of Remillard's several serious allergic reactions and the defendants' documented worries about her health, the defendants may offer their concerns for her safety at the second step of the McDonnell Douglas analysis as a legitimate and non-discriminatory reason for the adverse employment actions. Her motion for reconsideration is denied.

II.     The Defendants' Motion for Reconsideration

The defendants move for reconsideration of the portion of the court's order denying their motion for summary judgment as to Remillard's failure to accommodate claim. They argue that the three potential accommodations noted in the summary judgment order—posting fragrance-free signs, providing refresher education to employees, and offering Remillard a paid day or two of leave after an allergic reaction—would not have "affected the terms, conditions, or privileges" of Remillard's employment. Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264–65 (1st Cir. 1999). Specifically, they argue that these accommodations, "even if implemented, would not have changed the conclusion by Defendants that it was not safe to continue to employ Remillard." Doc. no. 53-1 at 2. Therefore, they contend that they cannot be liable for a failure to accommodate her. They also argue that the court's order is inconsistent, noting that the court acknowledged that the defendants implemented several measures to accommodate Remillard while concluding that they failed to reasonably accommodate her.

The defendants' arguments miss the mark. Evidence in the record shows that the defendants implemented many, but not all, of Remillard's requested accommodations. Indeed, in their summary judgment motion, they acknowledge that "Remillard's requests for signs to be

6

posted and a completely 'fragrance-free' policy were not implemented." Doc. no. 29-1. Although they argue that additional accommodations would have made no difference to Remillard's safety or their perception of her safety in light of her specific attacks, the court cannot make that determination when viewing the evidence in the light most favorable to Remillard.

Remillard's final allergic reaction, which led the defendants to conclude that they could no longer safely employ her, was caused when a lab employee sprayed perfume into the air to cover up a bad odor. The defendants emphasize that Remillard testified at deposition that the employee told her that she knew that she should have used the air deodorizers. Doc. no. 53-1 at 5. Though this testimony undercuts Remillard's claim, it does not render it legally invalid. Viewing the evidence in the light most favorable to Remillard, as the court must, there remains a dispute of fact as to whether and to what extent the proposed accommodations, if implemented, would have prevented the employee's actions or similar actions in the future.

Nor does the court agree that its summary judgment order is inconsistent. The defendants argue, in so many words, that the court cannot acknowledge on one hand that the defendants implemented several measures to accommodate Remillard while on the other hand deny their motion on Remillard's failure to accommodate claim. See doc. no. 53-1 at 7. This argument requires little discussion. Remillard requested certain accommodations that the defendants chose not to implement. Although the defendants provided other accommodations, that fact "is not dispositive" and does not necessarily entitle them to judgment on Remillard's failure to accommodate claim. See Higgins, 194 F.3d at 65 ("Although an employer's provision of a specific accommodation may provide relevant circumstantial evidence in respect to the reasonableness *vel non* of a different accommodation, that accommodation will not always be enough to satisfy the employer's duty under the law." (internal citations omitted));

7

Paraskevopoulos v. Cent. Maine Med. Ctr., No. 2:17-CV-00166-JAW, 2019 WL 3767462, at *12 (D. Me. Aug. 9, 2019), report and recommendation adopted, No. 2:17-CV-00166-JAW, 2019 WL 4673182 (D. Me. Sept. 25, 2019).

As the court noted in its summary judgment order, the defendants offer arguments that weigh strongly in their favor and which may well persuade a jury. But, giving Remillard every reasonable inference, the court cannot conclude at this stage that no reasonable jury could find that the defendants failed to reasonably accommodate Remillard's disability. Their motion for reconsideration is denied.

III. Requests for Clarifications

In their motions, the parties seek clarification as to certain issues that remain in this case. The court addresses the parties' requests below.

A. Remillard's Requests for Clarification

1. Limits of Remillard's Failure to Accommodate Claim

Remillard asks:

[H]as the Court decided, as a matter of law that the Defendants' obligation to reasonably accommodate Plaintiff is limited to the three accommodations identified in its Order and excluded a general failure to accommodate due to the failure to engage in the interactive process following Plaintiff's last reaction at work and prior to terminating her employment?

Doc. no. 51-1 at 5-6.

In denying the defendants' motion for summary judgment as to Remillard's failure to accommodate claim, the court identified three specific accommodations that Remillard requested but that the defendants did not implement. The court focused on those three requests for

8

accommodations because those were the only accommodations that Remillard identified, either in her summary judgment briefing or at oral argument, that the defendants allegedly refused to provide. To the extent that there is evidence of other "direct and specific" requests that Remillard made but that the defendants did not implement, and which do not appear in the summary judgment record, Remillard may present those at trial. Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (Tobin II).

But Remillard's request for clarification appears to be directed toward a different issue, one that underscores her theory of her failure to accommodate claim. Remillard appears to seek to hold the defendants liable for failing to engage in an amorphous ongoing dialogue to accommodate her that extends beyond any specific accommodations that she requested during her two years of employment. In other words, Remillard seeks to sidestep the evidentiary roadblock to her failure to accommodate claim—that there are only a small number of accommodations that she requested but which the defendants did not implement—by trying to hold the defendants liable for allegedly failing to engage in the interactive process.

Although several circuits have held that, "the failure to engage in an interactive process is not independently actionable under the [ADA]," Brigham v. Frontier Airlines, Inc., 57 F.4th 1194, 1201 (10th Cir. 2023) (citing cases), the First Circuit has held that liability for failing to engage in the interactive process may exist under certain limited circumstances. See, e.g., Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 24 (1st Cir. 2004). Liability of this sort

> depends on finding (1) that a breakdown in the process has occurred due to a failure to participate in good faith by the employer or a failure to make efforts to explore reasonable accommodations and (2) that the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions if the interactive process had not broken down.

Charette v. St. John Valley Soil & Water Conservation Dist., 332 F. Supp. 3d 316, 361 (D. Me. 2018) (citing Enica v. Principi, 544 F.3d 328, 339 (1st Cir. 2008) and Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012)). Such circumstances may include instances where a defendant "stonewall[s]" when a plaintiff requests accommodations or denies that a plaintiff has a disability at all, Calero-Cerezo, 355 F.3d at 24-25, or makes "no efforts . . . to develop an alternative accommodation" after its first one proves unworkable, Bell v. O'Reilly Auto Enterprises, LLC, 626 F. Supp. 3d 141, 178 (D. Me. 2022), appeal dismissed, No. 22-1711, 2022 WL 19224931 (1st Cir. Dec. 2, 2022).

During the summary judgment stage, Remillard pointed to no evidence that suggests that the defendants acted in bad faith or failed to make efforts to explore reasonable accommodations. Indeed, the record is replete with evidence showing that the defendants engaged with Remillard in an ongoing dialogue regarding accommodations and implemented many of her requests. See Remillard, 2024 WL 4349851, at *2-4. Thus, the summary judgment record does not support a claim based on a failure to engage in the interactive process. Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 109 (1st Cir. 2005) (Tobin I) (despite the potential viability of a failure to accommodate claim, affirming the district court's grant of summary judgment on a claim for failure to engage in the interactive process where the "record is filled with evidence of accommodations" that the defendant made for the plaintiff and "there was not only a great deal of discussion about [the plaintiff's] difficulties, but significant action on the part of [the defendant]"). Nevertheless, because the parties did not present that issue during the summary judgment stage, the court has not ruled as a matter of law that the defendants fulfilled their

obligation to engage in the interactive process.[2] Therefore, unless the defendants successfully raise the issue in a motion in limine, Remillard may be able to pursue that theory at trial.

The court notes for the sake of clarity that Remillard's attempt to pursue a theory that the defendants failed to engage in the interactive process following her last reaction appears to be, for all intents and purposes, unnecessary. After her final reaction, Remillard told the defendants that the accommodations that were in place were working effectively. But she requested an additional accommodation—reeducating employees about the existing policies. Remillard is entitled to argue that this was a reasonable request for an accommodation which the defendants were required to, but did not, implement. Therefore, it is unclear why Remillard would seek to argue that the defendants are liable for failing to engage in the interactive process with regard to that request rather than that the defendants are liable for failing to grant that request. Nevertheless, as the court stated, she may pursue that theory absent a ruling from the court to the contrary.

2.   Interactions After Third Serious Reaction

Remillard asks:

[H]as the Court decided as matter of law that the employer's demand for Plaintiff's prognosis, treatment plans, whether her condition was life threatening, and to identify the specific ingredient in bleach were permissible inquiries under the ADA as a matter of law? Further to this question, has the Court determined as a matter of law that Plaintiff wrongfully withheld this information?

Doc. no. 51-1 at 6.

---

[2] As discussed below, the court's only ruling as to the parties' obligations during the interactive process pertained to the defendants' motion for summary judgment, in which the defendants argued that they are entitled to judgment because Remillard failed to engage in the interactive process. The court denied that portion of the defendants' summary judgment motion.

Remillard's question pertains to her and her counsel's interactions with the defendants and their counsel regarding whether the defendants felt they could accommodate Remillard after her third serious allergic reaction. As mentioned, the defendants moved for summary judgment on Remillard's discrimination claim arguing, in part, that Remillard failed to engage in the interactive process. The court denied that portion of the motion. The court noted that the defendants' requests during that time appeared to be permitted under the ADA, but it made no definitive ruling on that issue or whether Remillard's refusal to provide the information was justified. Remillard, 2024 WL 4349851, at *15.

Although that issue remains unresolved, the court takes the opportunity to clarify the relevance of the parties' communications after Remillard's third serious reaction. First, to the extent that Remillard intends to argue that the defendants can be liable for failing to engage in the interactive process after Remillard's third reaction, the court notes again that she has pointed to no evidence to support that theory. The evidence in the summary judgment record shows that the defendants continually sought information during that period to help them evaluate whether they could keep Remillard safe in the workplace. The defendants

> allowed Remillard to return to work only after: 1) they received recommended accommodations from Remillard's provider; 2) the defendant's employees met and considered whether they could and how best to implement those accommodations; 3) the defendant's attorney explained to Remillard's attorney the accommodations they could offer and made sure she understood that they could not guarantee that she would never be exposed to a triggering fragrance or chemical; and 4) Remillard agreed to those conditions.

Id. at *11. As the court mentioned above, there is nothing in the summary judgment record to support the theory that the defendants acted in bad faith or failed to explore accommodations during that process.

For the parties' benefit, the court notes that even if the defendants could be liable for failing to engage in the interactive process after Remillard's third reaction, the available damages would appear to be limited to those accruing during her two-and-a-half month suspension. There is no dispute that when Remillard returned from her suspension, the defendants implemented accommodations, Remillard expressed satisfaction with those accommodations, and she did not request a further accommodation until after her fourth reaction, just before the defendants terminated her employment. Therefore, if Remillard intends to pursue a theory that the defendants are liable for failing to engage in the interactive process after her third reaction, her damages would be limited to her losses during her suspension. Again, to the extent that the defendants seek to preclude Remillard from pursuing that theory, they may raise the issue in a motion in limine.

### 3. Pretext

Remillard's next requests reads as follows:

> Third, the Court makes numerous statements about what the parties did and did not do in the context of the McDonnel Douglass [sic] framework, arguing that the Plaintiff cannot prove the Defendants' claim of safety concerns were a sham intended to cover up discrimination. (Doc. 48, Order at p. 20-24). Many of these facts relate to a failure to reasonably accommodate Plaintiff, however, which does not require a showing of animus and adherence to the pretext framework. See Higgins v. New Balance Athletic Shoe Co., 194 F.3d 252, 256 (1st Cir. 1999). (An employer, like Defendants, "who knows of a disability yet fails to make reasonable accommodations violates the statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business.") citing 42 U.S.C.S. § 12112(b)(5)(A).

Doc. no. 51-1 at 6.

Remillard's third request is unclear and does not appear to seek clarification of any issue. To the extent that she seeks confirmation that a failure to accommodate claim does not require her to show discriminatory animus, she is correct. See Remillard, 2024 WL 4349851, at *6.

Viewed in conjunction with statements made in Remillard's objection to the defendants' motion for reconsideration and her prior inquiry about the limits of her claim alleging a failure to accommodate, the court will take the opportunity to clarify again an issue that it discussed with counsel during oral argument: it is not aware of any legal theory that would allow Remillard to argue to a jury that her termination and suspension, in and of themselves, are failures to accommodate her disability. In other words, Remillard has suggested that the defendants failed to accommodate her when they suspended and fired her because, by doing so, they necessarily withdrew the accommodations that they had in place. To permit Remillard to pursue claims alleging that the defendants failed to accommodate her by suspending or terminating her would allow her to do an end-run around the requirement that she can overcome the defendants' legitimate non-discriminatory reasons for those adverse actions only if she can present evidence of pretext and discriminatory animus. Moreover, if terminating employment were sufficient to establish that an employer did not reasonably accommodate a disability despite knowing of it, that legal construct alone would expose any employer to potential liability for failing to reasonably accommodate when it terminated a previously-accommodated employee. It would render the McDonnell Douglas framework a nullity for those employees who had been accommodated. As is well-established, discriminatory animus is irrelevant in the context of failure to accommodate claims and, it would seem, the elements of a failure to accommodate claim would necessarily be met. To the extent that Remillard seeks to present this novel theory to the jury, she must file an appropriate pretrial motion with supporting legal authority.

14

4. <u>Counsel as Witnesses</u>

Finally, Remillard seeks clarification as to whether counsel may be called as witnesses, and if so, what impact that might have on how the case will proceed. She states:

> [T]he Court's analysis of Plaintiff's failure to accommodate claims appears to implicate current counsel for both Plaintiff and Defendants as potential witnesses. For example, in discussing the interactive process and Defendants' accommodations, the Court notes that Defendants do not explain how Remillard's failure to provide every piece of information that the Defendants sought affected their decision or the accommodation they implemented. (Doc. 48, Order at p. 29). The likely reason for this is because Defendants cannot explain this. As was discussed in Plaintiff's Motion to Compel (Doc. 26, Denied by the Court at Doc. 39) documents listed on Defendant's privilege log after depositions of all witnesses identified as significant decision-makers were unable to answer these exact questions, it appears that these were decisions made by outside legal counsel. In addition, at least one of the accommodations the court has identified as an issue for trial was raised solely in correspondence between counsel. Because Plaintiff wants to ensure that this will not be an issue raised on the eve of trial resulting in further delay, she respectfully requests feedback from the Court regarding whether there exists a conflict for counsel for all parties as we proceed to trial.

Doc. no. 51-1 at 7.

Remillard does not explain adequately the circumstances under which counsel for the parties could be potential witnesses in this case. The only claim remaining in this case is a failure to accommodate claim. Even if the defendants' counsel were involved in the decision-making process regarding Remillard's suspension or termination, Remillard has not shown how that fact is relevant to her remaining claim. See Higgins, 194 F.3d at 264 (holding that the relevant issue in a failure to accommodate claim is whether the defendant implemented the reasonable accommodation, not the defendant's intent); Adams v. N. New England Tel. Operations, L.L.C., No. CIV. 08-296-B-W, 2009 WL 2712970, at *11 (D. Me. Aug. 27, 2009) (noting that the

15

"subjective intention on the part of the relevant decision maker(s) to terminate [a plaintiff's] employment because of her disability" is not relevant in a failure to accommodate claim).

Further, Remillard has not shown that the defendants' counsel participated in or made business decisions, particularly where, as here, the defendants have not asserted an advice-of-counsel defense.[3] See Lakes v. Fulton Cnty. Sch. Dist., No. 117CV04685WMRCMS, 2019 WL 13131405, at *6 (N.D. Ga. Mar. 6, 2019) (holding that the plaintiff could not take deposition of the defendant's counsel despite the fact that the defendant's employee "sought the advice of counsel in his role as decisionmaker with regard to Plaintiff's February 2016 request for accommodation under the ADA" because "[t]here is also no indication in the record that the [defendant] has asserted reliance on its attorney's advice as an element of a claim or defense [or] that it has placed the attorney-client relationship directly at issue"), aff'd, No. 1:17-CV-04685-WMR, 2019 WL 13131385 (N.D. Ga. July 3, 2019). The mere fact that Remillard's attorney and the defendants' attorney communicated regarding Remillard's accommodations during her suspension does not necessarily make them potential witnesses.

For those reasons, Remillard has not shown that counsel for the parties could be potential witnesses in this case. To the extent that Remillard's counsel nevertheless believes that she may be a potential witness, she may consult the Model Rules of Professional Conduct and take any action that she deems appropriate.

---

[3] Remillard previously moved to compel the production of certain documents involving the defendants' counsel listed on the defendants' privilege log, arguing that the defendants should produce those documents because outside counsel was involved in making decisions related to Remillard's accommodations. Magistrate Judge Saint-Marc denied the motion. Doc. no. 39.

B.      The Defendants' Request for Clarification

The defendants seek clarification as to the damages available to Remillard at trial. They ask to limit the damages available for each unimplemented accommodation and seek a ruling from the court that Remillard cannot recover lost wages on her claim. In support of their requests, they state that lost wages are not available because "the Court has specifically held that Defendants' decision to terminate Remillard's employment was motivated solely by concerns for Remillard's safety and not due to her disability or in retaliation for her accommodation requests." Doc. no. 53-1 at 6.

As discussed, the court granted the defendants' summary judgment motion as to Remillard's disability discrimination claim based on adverse employment actions. Using the McDonnell Douglas framework, the court explained that "Remillard has failed to point to evidence of pretext or discriminatory animus motivating the defendants' decisions to place her on leave and terminate her employment." Remillard, 2024 WL 4349851, at *11. But that conclusion does not categorically exclude lost wages as available damages for Remillard's failure to accommodate claim.

In Tobin v. Liberty Mutual Insurance Company, a fired insurance sales representative sued Liberty Mutual, alleging disability discrimination, including a failure to accommodate, under the ADA and the Massachusetts anti-discrimination statute. Tobin I, 433 F.3d at 102. The district court granted summary judgment as to all claims. Id. On appeal, the First Circuit affirmed the district court, explaining that the plaintiff had not put forth evidence demonstrating that his employer's reason for firing him was pretext. Id. at 105-06. But it reversed judgment on the plaintiff's failure to accommodate claim and remanded that claim for further proceedings. Id. at 108.

17

The district court held a jury trial on the failure to accommodate a claim. Tobin II, 553 F.3d at 125. The jury found in the plaintiff's favor and awarded both front pay and back pay as damages. Id. at 126. The First Circuit affirmed the award. Id. at 141-44.

As Tobin I illustrates, a defendant may have a legitimate, non-discriminatory reason for terminating a disabled employee and therefore not be liable under the ADA for the act of termination but may still be liable for a failure to accommodate claim. And as Tobin II illustrates, an employee may recover lost wages for such a claim if the evidence supports it. Remillard may thus pursue damages in the form of lost wages, even though she was fired for a legitimate, non-discriminatory reason.

Even if lost wages are not categorically excluded as damages, the defendants also seek to separate out and limit the available damages for each of the three requests for accommodations identified in the court's summary judgment order. They offer no support for the theory that a jury may parse a failure to accommodate claim to determine the appropriate amount of damages for specific unimplemented accommodations. To the extent that they believe such authority exists, they may present it in a properly supported motion in limine.

## Conclusion

For the foregoing reasons, the plaintiff's motion for reconsideration (doc. no. 51) and the defendants' motion for reconsideration (doc. no. 53) are denied.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 30, 2025
cc: Counsel of Record.